UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JESSICA LEE SKRZYPIEC, | CASE NO. 1:24-CV-00356-BMB |
| Plaintiff, | JUDGE BRIDGET BRENNAN |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| COMMISSIONER OF SOCIAL SECURITY, | REPORT AND RECOMMENDATION |
| Defendant. | |

## INTRODUCTION

Plaintiff Jessica Skrzypiec challenges the Commissioner of Social Security's decision denying disability insurance benefits (DIB). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On February 26, 2024, pursuant to Local Civil Rule 72.2, this matter was referred to me to prepare a Report and Recommendation. (Non-document entry dated Feb. 26, 2024).

Following review, and for the reasons stated below, I recommend the District Court **AFFIRM** the Commissioner's decision.

## PROCEDURAL BACKGROUND

Ms. Skrzypiec applied for DIB on December 9, 2021, alleging a disability-onset date of June 4, 2021. (ECF #8-1 at PageID 1353). The claim was denied initially and on reconsideration. (*See* Tr. 7-91, 98-102). Ms. Skrzypiec then requested a hearing before an ALJ. (Tr. 103-04). Ms. Skrzypiec (represented by counsel) and a vocational expert (VE) testified before the ALJ on

December 20, 2022. (Tr. 40-63). On February 14, 2023, the ALJ determined Ms. Skrzypiec was not

disabled. (Tr. 15-39). On January 4, 2024, the Appeals Council denied Ms. Skrzypiec's request for

review, making the hearing decision the final decision of the Commissioner. (Tr. 1-7; *see* 20 C.F.R.

§ 404.984(b)(2)). Ms. Skrzypiec then timely filed this action on February 26, 2024. (ECF #1).

FACTUAL BACKGROUND

I.      **Personal and Vocational Evidence**

Ms. Skrzypiec was 35 years old on the disability-onset date and 37 years old at the hearing.

(*See* ECF #8-1 at PageID 1353). She has a college education and previously worked as a psychiatric

social worker and a mental health counselor. (*Id.*; *see also* Tr. 59).

II.     **Relevant Medical Evidence**

Ms. Skrzypiec applied for disability for her chronic and intractable pain, post-surgical

condition, digestive tract/bowel issues, depression, and anxiety. (Tr. 169, 195).

Ms. Skrzypiec underwent a sleeve gastrectomy in May 2021. (Tr. 291). On October 13,

2021, she presented at the hospital emergency room for abdominal pain that began early that

morning. (Tr. 264). She was assessed with diffuse abdominal tenderness. (Tr. 264-65). Later that

month, she returned to the hospital's gastroenterology department, where "[a]fter a prolonged

office visit, [she] did admit to having been diagnosed with IBS with constipation for more than 5

years." (Tr. 249). Though Ms. Skrzypiec disagreed with the diagnosis, she reported "having the

same symptoms over the last 5 years off-and-off" and they progressively worsened since her sleeve

gastrectomy. (*Id.*). She also endorsed daily abdominal pain that radiated "until she had a sharp

shooting pain in the rectum and passes flatus or bowel movement." (*Id.*). Ms. Skrzypiec was also

2

assessed with abdominal bloating and distention and nausea. (*Id.*). The provider suspected possible cannabis cyclic hyperemesis[1] and advised her to stop using medicinal marijuana. (*Id.*).

On November 23, 2021, Ms. Skryzpiec sought a second opinion from gastroenterologist Dany Raad, M.D., and she described her abdominal pain as "10/10, stabbing, cramping and pulling." (Tr. 1039). She reported "her worst symptom is the pain which she gets all the time and is not always related to her bowel movements." (*Id.*). She reported "chronic constipation but her pain does not always get better after she has a bowel movement." (*Id.*). Dr. Raad diagnosed her with chronic abdominal pain, suspecting "her diagnosis is functional abdominal pain possibly IBS with constipation" but noted "[i]t does not seem that bowel movements improve her symptoms so I am not really sure if it is all related to the constipation." (Tr. 1038).

Ms. Skryzpiec twice sought emergency care for abdominal pain in January 2022; she reported epigastric pain but denied nausea and vomiting. (Tr. 414, 448). Her diagnostic workup was negative. (Tr. 414 449). Also in January 2022, Ms. Skryzpiec established care for chronic abdominal pain since her gastric sleeve procedure. (Tr. 519). She was continuing to use marijuana daily. (Tr. 520). On examination, her abdomen was mildly, diffusely tender. (Tr. 521). She was advised on dietary modifications (Tr. 523) and began physical therapy. (*See* Tr. 738, 750).

Ms. Skryzpiec has a longstanding history of depression and anxiety, with "numerous suicide attempts from ages 7-21." (Tr. 332). She had been prescribed multiple medications over 2018 through 2021. (Tr. 332). When evaluated by Scott Schmitt, M.D., in June 2021 (the same

---

[1] Cannabinoid hyperemesis syndrome is a condition characterized by cycles of persistent nausea, severe vomiting (hyperemesis), and intense abdominal pain caused by long-term, regular use of cannabis. *Cannabis Hyperemesis Syndrome (CHS), Cleveland Clinic,* http://my.clevelandclinic.org/health/diseases/21665-cannabis-hyperemesis-syndrome (last accessed Oct. 8, 2024).

month as the disability onset date), Ms. Skryzpiec reported that she was working on a doctorate degree in counseling, education, and supervision; working on a graduate assistantship; and working part-time as a counselor. (Tr. 332). She described having been unable to take her previously prescribed medications since her May 2021 gastrectomy because of nausea and vomiting. (Tr. 332). However, she noted her mood had been "holding up so far." (*Id.*). On examination, her mental status was normal. (Tr. 333). By July 2021, Ms. Skryzpiec had lost her relationship, previous job, and her school. (Tr. 382).

In January 2022, Ms. Skryzpiec presented to Dr. Schmitt as tense. (Tr. 498). Dr. Schmitt started her on a trial of a new psychological medication in addition to her current medication. (Tr. 499). The following month, her mental status was normal and so no changes were made to her treatment regimen. (Tr. 501-02). In March 2022, Ms. Skryzpiec reported feeling stable on her medication regimen and presented with a normal mental status. (Tr. 1283-84). Despite some increased stress, she continued to report being stable and presented with a normal mental status in April (Tr. 1287-88), May (Tr. 1290-91), July (Tr. 1293-94), and October. (Tr. 1294-95). On May 9, 2022, Ms. Skryzpiec changed care providers and underwent a new psychiatric evaluation that yielded normal, average, stable, or intact findings. (Tr. 651-52). She reported "a great deal of pain and severe limitations due to her nausea." (Tr. 652). Though she had improved overall mood, she still experienced had significant depressive symptoms related to her chronic pain. (*Id.*).

In addition to  treating with Dr. Schmitt, Plaintiff attended regular counseling with Sara Booth, LISW-S. Throughout the sessions, she had a depressed mood (Tr. 381, 389, 391, 393, 395, 397, 399, 401, 537, 542, 549, 551, 557, 561, 563, 1054, 1058, 1062, 1065), was irritable (Tr. 395, 1060), and anxious. (Tr. 553, 561, 563, 1058, 1062, 1067). She was also oriented, had appropriate

appearance and dress; appropriate interview behavior; normal speech, insight, judgment, and impulse control; intact memory; good attention and concentration; appropriate thought processes; unremarkable perception; and intact "functional status." (Tr. 375, 379, 381, 382, 383, 385, 387, 389, 391, 393, 395, 397, 399, 401, 402, 403, 537, 539, 542, 544, 547, 549, 551, 553, 555, 557, 559, 561, 563, 565, 567, 569, 1050, 1052, 1054, 1056, 1058, 1060, 1062, 1065, 1067, 1069, 1074, 1076, 1078, 1080).

### III.    Medical Opinions

On January 2, 2022, Ms. Booth submitted a letter stating:

To Whom it May Concern,

This letter is to serve as documentation that my client, [Ms. Skryzpiec] is currently in therapy with this therapist. Due to significant pain issues, [Ms. Skryzpiec] has been having trouble focusing and experiencing increased depression. Per client she has been unable to work with as a result.

Sincerely,

Sarah Booth, LISW-S

(Tr. 406).

On February 14, 2022, state agency psychological consultant Irma Johnston, Psy.D., evaluated Ms. Skryzpiec in connection with her disability application. (Tr. 74-76). Dr. Johnston assessed moderate limitations in Ms. Skryzpiec's ability to carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or in proximity to others without being distracted, complete a normal workday and workweek without interruptions or unreasonable number and length of rest periods, and respond appropriately to changes in the work setting. (Tr. 74). Dr. Johnston assessed no limitations in other areas of mental functioning. (*Id.*). Dr. Johnston opined Ms. Skryzpiec "can concentrate, persist, and maintain pace to carry out a

simple learned routine in a structured and predictable work setting" and "can adapt and manage herself in a structured and predictable work setting, where changes can be explained." (*Id.*). On July 12, 2022, state agency psychological consultant Audrey Todd, Ph.D., reviewed on reconsideration Ms. Skryzpiec's new treatment records, noted she did not have worsening or new conditions, treatment, or diagnoses, and affirmed Dr. Johnston's conclusions. (Tr. 83-84).

On February 18, 2022, state agency medical consultant Dana Schultz, M.D., evaluated Ms. Skryzpiec in connection with her disability application. (Tr. 73). Dr. Schultz opined Ms. Skryzpiec could lift and carry 20 pounds occasionally and 10 pounds frequently, was otherwise unlimited in pushing and pulling, and could sit, stand, or walk about six hours in an eight-hour workday. (*Id.*). On July 11, 2022, state agency medical consultant Leslie Green, M.D., reviewed on reconsideration Ms. Skryzpiec's new treatment records, noted she did not have worsening or new conditions, treatment, or diagnoses, and affirmed Dr. Schultz's conclusions. (Tr. 82).

On August 3, 2022, Ms. Booth submitted a Mental Impairment Questionnaire opining on Ms. Skryzpiec's mental limitations based on her three years of counseling. (Tr. 571-72). Ms. Booth opined via check-marked boxes that Ms. Skryzpiec was "unable to meet competitive standards" in: carrying out very short and simple instructions, carrying out detailed instructions, maintaining attention and concentration for extended periods, performing activities within a schedule, complete a normal workday and workweek without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, interacting appropriately with the general public, maintaining socially appropriate behavior and adhere to basic standards of neatness and cleanliness, and setting realistic goals or make plans independently of others. (*Id.*). Ms. Booth opined Ms. Skryzpiec was "seriously limited,

but not precluded" from asking simple questions or requesting assistance. (Tr. 572). Ms. Booth then concluded that Ms. Skryzpiec's impairments would cause her to be absent from work seven days a week and that she would be off task 100% of the workday. (*Id.*).

## IV.  Relevant Testimonial Evidence

Ms. Skryzpiec testified that she is unable to work since her May 2021 sleeve gastrectomy because she experiences constant, incredible pain that has not subsided. (Tr. 48). She cannot sit for more than an hour at a time without rest. (*Id.*). She also experiences constant nausea. (*Id.*). She must eat from a feeding tube to get nutrition to avoid forcing herself to eat and drink. (Tr. 49). She tries to be physically active, but afterward must lay down and is "incapacitated for a while." (*Id.*). She must lay down to get her bearings, breathe deeply to manage her nausea, and is eventually can sit upright. (Tr. 50-51). Despite multiple medical providers, she has been unable to resolve her problems so that she can return to work. (Tr. 49).

She attributes her declining physical health to causing her declining mental health. (Tr. 54). She has had suicidal thoughts for the first time in over a decade. (*Id.*). Her mental-health issues impact her ability to focus on her work as a mental-health counselor. (*Id.*). Ms. Skrzypiec describes herself as having always worked while in school, worked overtime, or worked multiple jobs and thus has been deeply affected by the loss of her career. (Tr. 56). Her depression and anxiety have "consumed everything" and her work as a mental-health counselor would overwhelm her and leave her unable to focus on her clients' needs. (*See* Tr. 56). She also describes herself as having "a very short fuse" when interacting with others. (Tr. 54-55).

Ms. Skrzypiec testified she was able to briefly return to work for ten hours a week but was limited by her pain and her inability to sit up. (Tr. 47). But she "had to give it all up because she

could not sit up for more than an hour." (*Id.*). Since then, she supervised one person for an hour a week while lying down. (*Id.*).

Ms. Skryzpiec lives with her sister and relies on her to perform household chores such as meal preparation or caring for her daughter. (Tr. 52). She feels guilt over relying on her sister for so much. (Tr. 55). She can go grocery shopping with her sister, though often returns to the car as she can stand for 45 minutes at most. (Tr. 52). After 45 minutes of standing, she must rest for two to three hours. (Tr. 52-53).

The VE classified Ms. Skryzpiec's prior work experience as a psychiatric social worker and mental-health counselor. (Tr. 59). The ALJ then posed to the VE a hypothetical individual with Ms. Skryzpiec's age, education, and experience who is (i) limited to light work; (ii) can concentrate, persist, and maintain pace to carry out a simple, learned routine in a structured and predictable work setting; and (iii) can adapt and manage herself in such a work setting. (Tr. 60). The VE opined that such an individual could not perform Ms. Skryzpiec's past work, but could perform other unskilled jobs, such as a sales attendant, food-service worker, and housekeeper. (Tr. 60-61). The ALJ then further limited the hypothetical individual to sedentary work and the VE opined such an individual could work as a charge-account clerk, telephone clerk, and document preparer. (Tr. 61). The VE then noted that a person could be off task no more than 10% of the time to maintain employment. (Tr. 62).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. § 423(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1.  Was claimant engaged in a substantial gainful activity?

2.  Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3.  Does the severe impairment meet one of the listed impairments?

4.  What is claimant's residual functional capacity and can claimant perform past relevant work?

5.  Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity (RFC) to perform available work in the national economy. *Id.* The ALJ considers the claimant's RFC, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## THE ALJ'S DECISION

At Step One, the ALJ determined Ms. Skrzypiec had not engaged in substantial gainful activity since June 4, 2021. (Tr. 20). At Step Two, the ALJ identified Ms. Skrzypiec's irritable bowel syndrome, major depressive disorder, generalized anxiety disorder, binge eating disorder, and

9

complications arising from her bariatric surgery as severe impairments. (Tr. 21). At Step Three, the

ALJ found Ms. Skrzypiec's impairments did not meet the requirements of, or were medically

equivalent to, a listed impairment. (Tr. 21-23).

> At Step Four, the ALJ determined Ms. Skrzypiec's RFC as follows:
>
> After careful consideration of the entire record, the undersigned finds that [Ms. Skrzypiec] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can concentrate, persist, and maintain pace to carry out a simple learned routine in a structured and predictable work setting. She can adapt and manage herself in a structured and predictable work setting, where changes can be explained.

(Tr. 23). The ALJ then found Ms. Skrzypiec cannot perform her past relevant work as a mental-

health counselor. (Tr. 33). At Step Five, the ALJ determined jobs exist in significant numbers in

the national economy that Ms. Skrzypiec can perform, including sales attendant, food-service

worker, and housekeeper. (Tr. 33-34). Therefore, the ALJ found Ms. Skrzypiec was not disabled.

(Tr. 34).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the court "must affirm the

Commissioner's conclusions absent a determination that the Commissioner has failed to apply the

correct legal standards or has made findings of fact unsupported by substantial evidence in the

record." *Walters,* 127 F.3d at 528. The Commissioner's findings "as to any fact if supported by

substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833

(6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "Substantial evidence" is "more than a scintilla of

evidence but less than a preponderance and is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028,

1030 (6th Cir. 1992). But "a substantiality of evidence evaluation does not permit a selective

reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F.App'x 636, 641 (6th Cir. 2013) (cleaned up).

In determining whether substantial evidence supports the Commissioner's findings, the court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence (or indeed a preponderance of the evidence) supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether substantial evidence supports the Commissioner's decision, the court must determine whether proper legal standards were applied. The failure to apply correct legal standards is grounds for reversal. Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own regulations and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004).

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F.Supp.2d

875, 877 (N.D. Ohio 2011) (internal quotations omitted); *accord Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked.")

## DISCUSSION

Ms. Skrzypiec argues the ALJ erred at Step Four of the sequential analysis in two ways:

1. The ALJ erred when he improperly assessed the opinions of the treating source and failed to support his conclusions with substantial evidence.

2. The ALJ's RFC was contrary to law and the evidence in this matter which established that the combination of [Ms. Skrzypiec]'s symptoms precluded her from engaging in substantial gainful activity on a full-time and sustained basis.

(ECF #8 at PageID 1330). The Commissioner responds that the ALJ evaluated the treating-source opinion in question for supportability and consistency and the ALJ's findings about Ms. Skrzypiec's symptoms are supported by substantial evidence. (ECF #10 at PageID 1356-57).[2]

## I. The ALJ properly evaluated Ms. Booth's opinion for consistency and supportability.

First, Ms. Skrzypiec argues the ALJ erred in evaluating two opinions by her counselor, Ms. Booth. (ECF #8 at PageID 1342). Specifically, she argues the ALJ erred in evaluating Ms. Booth's letter by focusing exclusively on the letter's opinion that Ms. Skrzypiec could not work and erred in

---

[2] At the end of her reply brief, Ms. Skrzypiec asserts—without explanation—that the Commissioner's arguments are "a post hoc rationalization regarding the ALJ's incorrect adoption of the prior ALJ determination." (ECF #12 at PageID 710). Generally, the court may not accept counsel's post-hoc rationalization for an agency's action. *See Revello v. Comm'r of Soc. Sec.*, No. 5:20-CV-01860, 2021 WL 6064784, at *6 (N.D. Ohio Dec. 22, 2021). But Ms. Skrzypiec makes only a bare assertion and does not explain how the Commissioner's arguments were not the basis the ALJ articulated. Thus, I consider this argument waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

evaluating Ms. Booth's questionnaire because his conclusion that it was inconsistent with other evidence was not supported by substantial evidence. (*Id.*).

Because Ms. Skrzypiec filed her claim for DIB after March 27, 2017, the ALJ will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings, including those from your medical sources." 20 C.F.R. § 404.1520c(a); *see also Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017). Rather, an ALJ must explain how persuasive the ALJ finds those opinions to be. *See id.* § 404.1520c(b).

The ALJ determines the persuasiveness of a medical source's opinion by assessing five factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors that tend to support or contradict a medical opinion. *Id.* § 404.1520c(c). Supportability and consistency are the most important factors the ALJ must consider. *Id.* § 404.1520c(b)(2); *see also Palmore v. Comm'r of Soc. Sec.*, No. 1:20-CV-36, 2021 WL 1169099, at *4 (S.D. Ohio Mar. 29, 2021). As such, the ALJ must "*explain* how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. *See* 20 C.F.R. § 404.1520c(b)(2) (emphasis added).

### A.    Ms. Booth's letter

First, Ms. Skryzpiec argues that the ALJ improperly evaluated Ms. Booth's letter described above opining that Ms. Skryzpiec cannot work because of her pain and depression. (ECF #8 at PageID 1342; *see also* Tr. 406). The ALJ evaluated the letter as follows:

> On January 2, 2022, Sarah Booth, LISW-S wrote a letter stating that due to significant issues she had been having trouble focusing and experiencing increased

13

depression, which resulted in her being unable to work. The claimant's counselor has stated that the claimant is unable work work. [*sic*] This is an opinion on an issue that exceeds the expertise of this provider and is reserved to the Commissioner of Social Security under the law and 20 CFR 404.1527(d) and 416.927(d). Further, this opinion is not persuasive because Ms. Booth does not account for the claimant's daily marijuana use and the fact that she was not taking her medications as prescribed for most of the relevant period.

(Tr. 31) (citations omitted).

It is hard to see what portion of the letter the ALJ did not analyze. Ms. Booth's four-line letter offers little for the ALJ to analyze beyond stating Ms. Skryzpiec's pain and depression affect her focus and that she told Ms. Booth that she has been unable to work. (*See* Tr. 406). The ALJ correctly identified that Ms. Booth's recounting of Ms. Skryzpiec reporting she cannot work to be an issue reserved for the Commissioner. (*Id.*). An ALJ need not address certain statements that are "inherently neither valuable nor persuasive," such as statements on issues reserved for the Commissioner. 20 C.F.R. § 404.1520b(c)(3). One such statement on an issue reserved to the Commissioner is a statement "that you are or are not disabled, blind, able to work, or able to perform regular or continuing work." *Id.* § 404.1520b(c)(3)(i). Because Ms. Booth's statement that Ms. Skryzpiec is unable to work is a statement on an issue reserved for the Commissioner, the ALJ need not provide any analysis on that statement.

The ALJ also did not ignore Ms. Booth's other conclusion that Ms. Skryzpiec's pain and depression affect her focus. Rather, the ALJ found that conclusion "not persuasive" because it is inconsistent with "[Ms. Skryzpiec]'s daily marijuana use" and that she "was not taking her medications as prescribed," which Ms. Booth did not consider. (*See* Tr. 31). This demonstrates that the ALJ evaluated the statement for its consistency with other evidence as instructed by 20 C.F.R. § 404.1520c(c)(2). Moreover, substantial evidence supported the ALJ's conclusions that Ms.

14

Booth's letter was inconsistent with other medical evidence suggesting Ms. Skryzpiec's marijuana use was contributing to her condition (*see* Tr. 249 (noting possible "cannabis cyclic hyperemesis") and Tr. 251 (noting daily medical marijuana use)). The ALJ properly analyzed Ms. Booth's letter for its persuasiveness by applying the consistency factor and supported the analysis with substantial evidence.

### B. Ms. Booth's questionnaire

Ms. Skryzpiec next argues the ALJ erred in evaluating a Mental Impairment Questionnaire Ms. Booth submitted. (ECF #8 at PageID 1342). The questionnaire is a two-page opinion expressed in checkbox form. (*See* Tr. 571-72). The ALJ analyzed the questionnaire opinion as follows:

> On August 3, 2022, Sarah Booth completed a questionnaire in which she stated that she saw [Ms. Skryzpiec] weekly for the last three years. Her depression and anxiety made it difficult for her to sleep and focus. Ms. Booth opined that [Ms. Skryzpiec] was unable to meet competitive standards in the following: carry out very short and simple instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interacting appropriately with the general public, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, and set realistic goals or make plans independently of others. She was seriously limited, but not precluded from asking simple questions or requesting assistance. She anticipated that her impairments were cause her to be absent from work 7 days per week, and she would be off task 100% of the workday. This opinion was not persuasive because it was not supported by or consistent with other psychological records in the file or other opinions that [Ms. Skryzpiec] would have no more than moderate mental limitations. Examination showed that [Ms. Skryzpiec] appeared to be down. There were no abnormalities in her thought processes. She had no abnormalities in attention and concentration. Dr. Schmitt reminded her that she needed to take her medication as prescribed for it to be effective. Dr. Creel's examination showed that her recall, memory, attention, and concentration were normal. Her thought content was normal and her intellectual functioning was average. Therefore, the extreme limitations that [Ms. Skryzpiec] would be off-task 100% of the workday and would be absent every day from work are not supported. [Ms. Skryzpiec] did not require psychiatric hospitalization during the relevant period

and her psychological examination findings from Dr. Schmitt and Dr. Creel show no more than moderate limitations.

(Tr. 32-33) (citations omitted).

Here, the ALJ's analysis demonstrates that the ALJ properly evaluated the opinion for its supportability and consistency with other evidence in the record as instructed by 20 C.F.R. § 404.1520c(c). The ALJ analyzed the supportability of Ms. Booth's assessed limitation that Ms. Skryzpiec would be off-task 100% of the workday and absent seven days a week by noting there is no evidence in the record of abnormalities in her attention, concentration, or thought processes. The ALJ also analyzed the opinion for its consistency by comparing Ms. Booth's assessment that Ms. Skryzpiec is totally unable to work with Dr. Creel's and Dr. Schmitt's examinations that each showed "no more than moderate limitations." (*See* Tr. 33; *see also* Tr. 651-52 and 1299). Thus, the ALJ properly analyzed Ms. Booth's opinion for supportability and consistency and substantial evidence supported the ALJ's findings for each factor.

The ALJ's analysis is reinforced by the fact the opinion is in a check-box form with tick-marks under the columns "Seriously limited, but not precluded" and "Unable to meet competitive standards" with a few rows marked "n/a." (*See* Tr. 571-72). The opinion has no explanation beyond Ms. Skryzpiec's diagnoses, her medications, that her impairment would last at least 12 months, and a "fair" prognosis. (Tr, 571-72). The Sixth Circuit has held that a medical opinion is "patently deficient" when it involves "check-box analysis . . . not accompanied by any explanation." *See, e.g.*, *Hernandez v. Comm'r of Soc. Sec.*, 644 F.App'x 468, 474-75 (6th Cir. 2016); *Herzog v. Comm'r of Soc. Sec.*, No. 2:16-CV-244, 2017 WL 4296310, at *3 (S.D. Ohio Sept. 28, 2017) (noting that while "there is no per se rule regarding this type of evidence, the Sixth Circuit has cast doubt on the usefulness of check-box forms where the physician fails to give any explanation for his or her

findings."). Although the ALJ did not call out the form as a checkbox form, a medical opinion can be rejected for its checkbox format even if the ALJ does not expressly identify it as such. *See Gallagher v. Berryhill*, No. 5:16-CV-01831, 2017 WL 2791106, at *9 (N.D. Ohio June 12, 2017) (collecting cases), *report and recommendation adopted*, 2017 WL 2779192 (N.D. Ohio June 27, 2017).

There is no merit to Ms. Skrzypiec's other arguments that the ALJ should have found Ms. Booth's opinions more persuasive because other evidence supports them or that other persuasiveness factors—such as the length of treatment, the frequency of examination, and nature and extent of the treatment relationship—should control. (*See* ECF #8 at PageID 1338-41). The argument ignores the express instruction of 20 C.F.R. § 404.1520c(b)(2) that supportability and consistency are the most important factors to consider, which the ALJ found to undercut Ms. Booth's opinions. Because of that finding, Ms. Skrzypiec's arguments would also require the Court to independently re-weigh the persuasiveness factors and come to a different result than the ALJ where substantial evidence supports the ALJ's determination, which this Court may not do. *See Jones*, 336 F.3d at 477.

The ALJ properly analyzed Ms. Booth's questionnaire using the persuasiveness factors in 20 C.F.R. § 404.1520c and substantial evidence supported the ALJ's findings for each factor. Ms. Skrzypiec's arguments that other factors should control or the ALJ should have weighed the factors differently are meritless.

Consequently, I recommend that the District Court decline to order remand on this basis.

**II.     The ALJ properly analyzed Ms. Skrzypiec's subjective statements of her symptoms.**

In her second argument, Ms. Skrzypiec argues the ALJ did not follow Social Security Ruling (SSR) 16-3p because the ALJ did not consider the "combination of [Ms. Skrzypiec]'s symptoms precluded her from engaging in substantial gainful activity on a full-time and sustained

17

basis." (*See* ECF #8 at PageID 1344). The Commissioner responds that substantial evidence supports the ALJ's finding that Ms. Skryzpiec's symptoms are not as severe as she alleged. (ECF #11 at PageID 704-05).

In evaluating the claimant's subjective reports of symptoms, SSR 16-3p provides that an ALJ must consider the claimant's complaints along with the objective medical evidence, treatment received, daily activities, and other evidence. 2017 WL 5180304, at *5-8 (Oct. 25, 2017). In addition, the ALJ uses the factors set forth in 20 C.F.R. § 404.1529(c)(3) to evaluate the claimant's statements. These are:

1. A claimant's daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief from pain or other symptoms;

6. Any measures other than treatment an individual uses or used to relieve pain or other symptoms; and

7. Any other factor concerning an individual's functional limitations and restrictions due to pain and other symptoms.

The ALJ need not analyze all seven factors, only those germane to the alleged symptoms. *See Cross v. Comm'r of Soc. Sec.*, 373 F.Supp.2d 724, 733 (N.D. Ohio 2005).

Ms. Skrzypiec does not point to a particular factor that the ALJ did not consider. Rather, she argues the ALJ did not consider all the evidence of Ms. Skrzypiec's symptoms, such as her continuing pain, nausea, and fatigue. (ECF #8 at PageID 1348, 1350). Much of her argument recites evidence that supports her allegations of disabling symptoms. (ECF #8 at PageID 1344-47).

But "a Plaintiff does not demonstrate a violation of SSR 16-3p simply by reiterating the same subjective symptoms she believes should have been credited by the ALJ." *Zingale v. Kijakazi*, No. 1:20-CV-02197, 2022 WL 824148, at *8 (N.D. Ohio Mar. 18, 2022). This is because the ALJ is not required to accept a claimant's subjective complaints and may discount subjective testimony when the ALJ finds the complaints are inconsistent with objective medical and other evidence. *Jones*, 336 F.3d at 475-76. In reviewing an ALJ's evaluation of an individual's symptoms, the court is limited to evaluating whether the ALJ's explanations for discrediting an individual's testimony are reasonable and supported by substantial evidence in the record. *Id.* at 476.

Here, the ALJ's explanation for discrediting Ms. Skryzpiec's testimony is reasonable and supported by substantial evidence. First, the ALJ assessed Ms. Skryzpiec's condition and "mental abilities when she is receiving appropriate treatment and not using marijuana on a daily basis" as involving "working and earning $36.00 per hour and had nearly completed a Ph.D. in counseling." (Tr. 24-25). The record contains an October 1, 2020 progress note detailing that Ms. Skryzpiec was in a Ph.D. program, doing a graduate assistantship, and working part-time as a counselor at that time. (Tr. 318). This reasonably supports the ALJ's conclusion that Ms. Skryzpiec's limitations are not work-preclusive when properly treated.

Second, "the type, dosage, effectiveness, and side effects" of the medications Ms. Skryzpiec takes to alleviate her symptoms as well as "factors that precipitate and aggravate" her symptoms are two factors to consider. *See* 20 C.F.R. §§ 404.1529(c)(3)(v)-(vi). Here, the ALJ applied those factors to conclude Ms. Skryzpiec's marijuana use was a cause and aggravating factor of her abdominal pain and nausea. The ALJ found Ms. Skryzpiec inconsistently reported her use of medical marijuana, telling one care provider she had not used marijuana since 2004 and another that she

used marijuana daily. (Tr. 24; *see also* Tr. 251, 650). The ALJ then noted one of Ms. Skryzpiec's treating nurse practitioners suspected her abdominal pain, bloating, and distention are caused by her marijuana use, rather than by complications from her bariatric surgery. (Tr. 24).

Contrary to Ms. Skryzpiec assertion that the ALJ provided no limitations to accommodate her recurring fatigue, the RFC contains the exertional limitation that Ms. Skryzpiec is limited to light work. (Tr. 39). A job in the "light work" category "requires a good deal of walking or standing" or "involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). The ALJ's decision notes the assessment of the state agency medical consultants who assessed Ms. Skryzpiec as being able to stand, walk, or sit for six hours of an eight-hour workday. (Tr. 32). This, together with the RFC, suggests the ALJ did not find much disabling effect of Ms. Skryzpiec's complaints of fatigue. Ms. Skryzpiec does not point to any medical evidence in the record suggesting her fatigue had a disabling effect or had another cause the ALJ should have considered.

To the extent Ms. Skryzpiec argues the record supported her statements of disabling symptoms, such an argument would require the Court to reweigh the evidence, make credibility determinations, and come to a different conclusion than the ALJ, which this Court cannot do. *See Brainard*, 889 F.2d at 681.

Consequently, I recommend that the District Court decline to order remand on this basis.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, I recommend that the District Court **AFFIRM** the Commissioner's decision denying disability insurance benefits.

Dated: October 11, 2024

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

OBJECTIONS, REVIEW, AND APPEAL

Within 14 days after being served with a copy of this Report and
Recommendation, a party may serve and file specific written objections to the
proposed findings and recommendations of the Magistrate Judge. *See* Fed. R.
Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly
asserted objections shall be reviewed de novo by the assigned district judge.
Failure to file objections within the specified time may result in the forfeiture or
waiver of the right to raise the issue on appeal, either to the district judge or in a
subsequent appeal to the United States Court of Appeals, depending on how or
whether the party responds to the Report and Recommendation. *Berkshire v.
Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not
merely indicate a general objection to the entirety of the Report and
Recommendation; "a general objection has the same effect as would a failure to
object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir.
1991). Objections should focus on specific concerns and not merely restate the
arguments in briefs submitted to the Magistrate Judge. "A reexamination of the
exact same argument that was presented to the Magistrate Judge without specific
objections 'wastes judicial resources rather than saving them and runs contrary to
the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186,
2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at
509). The failure to assert specific objections may in rare cases be excused in the
interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th
Cir. 2019).